JONES TRUCK LINES, INC., Debtor–
In–Possession, Plaintiff,

v.

The SCOTT FETZER COMPANY d/b/a
Quikut, a Scott Fetzer Company d/b/a
Douglas, a Scott Fetzer Company, De-
fendant.

No. J–C–93–196.

United States District Court,
E.D. Arkansas,
Jonesboro Division.

Aug. 8, 1994.

Charles T. Coleman, Wright, Lindsey & Jennings, Little Rock, AK, David G. Sperry, Independence, MO, for plaintiff.

Stanley R. Langley, Jonesboro, AK, for defendant.

### AMENDED ORDER

STEPHEN M. REASONER, Chief Judge.

Presently pending before the Court are Plaintiff's Motion for Summary Judgment (Doc. #8), and Defendants Motion and Amended Motion for Stay and Referral of this Action to the Interstate Commerce Commission ("ICC") (Docs. #11 & #14).

### I. Background and Positions of the Parties

Plaintiff, A Northwest Arkansas transportation company currently in Chapter 11 bankruptcy proceedings, brought this action pursuant to the Interstate Commerce Act 49 U.S.C. § 10101 *et seq.* (1994) ("ICA") to collect $8,128.78 which it asserts represents the difference between the filed tariff rate for common carriage and the negotiated rate actually billed and paid for freight shipments made during 1988 through 1991. This action is one of numerous cases filed by plaintiff against shippers in an attempt to recover uncollected undercharges. Plaintiff contends it acted as a motor common carrier when it

transported the freight tendered by defendant and is, therefore, entitled to the filed tariff rate under the filed rate doctrine.[1]

Defendant denies the allegations in plaintiff's Complaint. In its Motion for Stay and Referral to the ICC, defendant contends that plaintiff transported the shipments as a contract carrier and thus is not entitled to the filed tariff rate. The defendant also asserts that even if plaintiff was acting as a motor common carrier, the tariff rates and plaintiff's practices were unreasonable and hence unenforceable. Therefore, the defendant argues that the matter should be referred to the ICC as the issues of (i) contract versus common carriage and (ii) the reasonableness of rates and practices are within the sole and primary jurisdiction of the ICC.[2]

Plaintiff asserts that the determination of defendants status as a contract or common carrier is a matter of law and properly determined by summary judgment. Furthermore, Plaintiff asserts that the Negotiated Rates Act ("NRA") of 1993, Publ. 103–180, 107 Stat. 2044, upon which defendant's Motion for Stay and Referral of the Issues to the ICC is partially based, does not apply to claims of bankrupts.

The threshold issues in this cause of action is whether the subject transportation was contract or common carriage and whether this Court or the ICC has primary jurisdiction to make the determination. If the transportation is held to be common carriage, then the issue of the reasonableness of the tariff rates and practices must be addressed. Again, this Court must determine whether it or the ICC has primary jurisdiction to then rule on these two reasonableness issues.

### II. Filed Rate Doctrine and Contract Carriage

A motor carrier acts either as a "motor common carrier" (49 U.S.C. § 10102(14) (1994)) or as a "motor contract carrier" (49 U.S.C. § 10102(15) (1994)). 49 U.S.C. § 10761(a) (1994) provides that a "motor

---

**1.** See *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.,* 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990)

**2.** See *Atlantis Exp., Inc. v. Standard Transp. Services, Inc.,* 955 F.2d 529 (8th Cir.1992); *Reiter v.*

*Cooper,* 507 U.S. ——, ——, 113 S.Ct. 1213, 1216, 122 L.Ed.2d 604 (1993); and *Jones Truck Lines, Inc. v. Grinnell Corp. Anvil Products Division,* 167 B.R. 488 (N.D.Ill.1994).

common carrier" shall not charge or receive different compensation for transportation than the tariff filed with the ICC. This practice has commonly become known as the filed rate doctrine. *Maislin Industries, U.S., Inc. v. Primary Steel, Inc.*, 497 U.S. 116, 127, 110 S.Ct. 2759, 2766, 111 L.Ed.2d 94 (1990).

■ A "motor contract carrier" is exempt from the filed rate doctrine. *Exemption of Motor Contract Carriers from Tariff Filing Requirements*, 133 M.C.C. 150 (1983), *aff'd sub nom. Central & Southern Motor Freight Tariff Ass'n v. U.S.*, 757 F.2d 301 (D.C.Cir. 1985), *cert. denied*, 474 U.S. 1019, 106 S.Ct. 568, 88 L.Ed.2d 553 (1985). A "motor contract carrier" is:

a person providing motor vehicle transportation of property for compensation under continuing agreements with one or more persons—

(i) by assigning motor vehicles for a continuing period of time for the exclusive use of each such person; or

(ii) designed to meet the distinct needs of each such person.

49 U.S.C. § 10102(15)(B) (1994). Therefore, contract carriage is for the exclusive use of the subscriber or designed to meet its distinct needs. The ICC applies a "totality of circumstances" test in determining the type of carriage. "[I]t is the totality of the circumstances surrounding any particular movement, not the presence or absence of a written contract, that determines whether the transportation is contract carriage." *Contracts for Transportation of Property*, 8 I.C.C.2d 520 (1992). "The ICC has stated repeatedly that it has primary jurisdiction to determine whether transportation subject to its regulation is contract carriage or common carriage." *F.P. Corp. v. Ken Way Transp., Inc.*, 821 F.Supp. 1032, 1035 (E.D.Pa.1993).

### III. Primary Jurisdiction

The Supreme Court has explained the doctrine of primary jurisdiction as follows:

The doctrine of primary jurisdiction, like the rule requiring exhaustion of administrative remedies, is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. 'Exhaustion' applies where a claim is cognizable in the first instance by an administrative agency alone; judicial interference is withheld until the administrative process has run its course. 'Primary jurisdiction,' on the other hand, applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending the referral of such issues to the administrative body for its views.

No fixed formula exits for applying the doctrine of primary jurisdiction. In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation. These reasons and purposes have often been given expression by this Court. In the earlier cases emphasis was laid on the desirable uniformity which would be obtained if initially a specialized agency passed on certain types of administrative question. More recently the expert and specialized knowledge of the agencies involved has been particularly stressed.

*U.S. v. Western Pacific R. Co.*, 352 U.S. 59, 63–64, 77 S.Ct. 161, 165, 1 L.Ed.2d 126 (1956) (citations omitted).

■ Under the doctrine of primary jurisdiction, the court has discretion to retain jurisdiction or, if the parties would not be unfairly disadvantaged, to dismiss the case without prejudice. *Reiter v. Cooper*, 507 U.S. ——, ——, 113 S.Ct. 1213, 1220, 122 L.Ed.2d 604 (1993). The doctrine applies to claims properly cognizable in federal court that contain an issue or issues within the special competence of an administrative agency. It enables a referral to the agency, staying further proceedings so as to give the parties reasonable opportunity to seek an administrative ruling. Referral of issues to an administrative agency does not deprive the court of jurisdiction; the court has discretion either to retain jurisdiction or, if the

parties would not be unfairly disadvantaged, to dismiss the case without prejudice. *Id.*

Several courts have determined that the ICC has primary jurisdiction of the common versus contract carriage issue. *Atlantis Exp., Inc. v. Standard Transp. Services, Inc.,* 955 F.2d 529 (8th Cir.1992); *Jones Truck Lines, Inc. v. Ardco, Inc.,* No. 93–2265, 1993 WL 339096 (N.D.Ill August 30, 1993); *Jones Truck Lines, Inc. v. Water Treatment Services, Ltd.,* 839 F.Supp. 548 (N.D.Ill.1993); *Brizendine v. Baldwin Hardware Corporation,* No. 91–6800, 1992 WL 209980 (E.D.Pa. August 24, 1992); and *F.P. Corp. v. Ken Way Transportation, Inc.,* 821 F.Supp. 1032 (E.D.Pa.1993); *Jones Truck Lines, Inc. v. Asco Hardware, Inc.,* No. LR–C–93–459, 1994 WL 261005 (E.D.Ark. March 8, 1994). However, the Court recognizes that there is a split among courts regarding the application of the doctrine of primary jurisdiction in determining contract versus common carriage. Reported cases taking the opposite position include: *Jones Truck Lines, Inc. v. Iversen Baking Co.,* 837 F.Supp. 290 (W.D.Ark.1993); *Brizendine v. Reliable Corp.,* 152 B.R. 224 (N.D.Ill.1993); and *Security Serv., Inc. v. Johnson Matthey, Inc.,* No. 91–6699, 1992 WL 176497 (E.D.Pa. July 15, 1992) (holding that the general jurisdiction of the ICC does not bar the court from determining whether the parties operated pursuant to contract or common carriage).

■ This Court agrees with those courts holding that the purposes of the doctrine of primary jurisdiction will be served through referral of the contract carriage issue to the ICC as it will promote uniformity in the application of the statutory scheme in the numerous Jones Truck Lines, Inc., Debtor-in-Possession cases filed. Furthermore, the

agency's expert and specialized knowledge will aid in the resolution of this issue. *See F.P. Corp.,* 821 F.Supp. at 1036; *I.C.C. v. J–T Transport Co.,* 368 U.S. 81, 94, 82 S.Ct. 204, 216, 7 L.Ed.2d 147 (1961); *Service Storage & Transfer Co. v. Com. of Virginia,* 359 U.S. 171, 177, 79 S.Ct. 714, 718, 3 L.Ed.2d 717 (1959). Finally, referral of this case to the ICC is particularly appropriate because if the ICC determines the carriage to be common then it also has primary jurisdiction to decide whether the rates charged and practices used to collect the charges for said carriage are reasonable.

## IV. Unreasonable Practice

The facts and issues involved in this case follow a pattern of cases which both the ICC [3] and the U.S. Supreme Court have noted to be frequently repeated:

> The facts of the ... cases follow a pattern that has been replicated many times in the era of 'deregulation' following enactment of the Motor Carrier Act of 1980, 40 Stat. 793: A motor carrier negotiates with a shipper rates less than the tariff rates that the Interstate Commerce Act, 49 U.S.C. § 10701 *et seq.,* requires the carrier to 'publish and file' with the ICC, 49 U.S.C. § 10762. After the shipments are delivered and paid for (sometimes years after), the carrier goes bankrupt and its trustee in bankruptcy sues the shipper to recover the difference between the negotiated rates and the tariff rates. Shippers' standard defenses against such 'undercharge' actions have been (1) that the carrier's attempt to collect more than the agreed-upon rates is an 'unreasonable practice' proscribed by the Act, *see* § 10701(a), and (2) that the tariff rates were unlawful be-

---

**3.** "The Commission has begun to observe the disturbing pattern of certain carriers failing to file tariffs containing the many rate they negotiated daily. At the time of shipment, these carriers had charged the rate they had negotiated to attract the traffic, but then later (often much later), they, or more often their trustees in bankruptcy, had billed the shipper for undercharges (i.e. the difference between the rate in the tariff and the unpublished negotiated rate). The Commission concluded that in these circumstances, rigid enforcement of the filed rate doctrine would unfairly reward those carriers for their

own actions (or omissions), would frustrate the national transportation policy of encouraging pricing innovation and competition, and would not be necessary to prevent discrimination. The Commission offered to determine in individual cases (on petition or complaint and with or without court referral) whether this pattern of conduct, culminating in the attempt to collect undercharges, constituted an unreasonable practice. *Petitions for Issuance of Rate Reasonableness and Unreasonable Practices Policy Statement,* 8 I.C.C.2d 61, 62 (1991).

cause they were unreasonably high. In 1989, the ICC announced a policy approving the first of these defenses. Our decision in *Maislin* held that policy invalid under the ICA, because it would 'rende[r] nugatory' the specific command of § 10761 that the carrier charge the filed rate. While *Maislin* thus eliminated the shippers' 'unreasonable-practice' defense, it expressly noted that '[t]he issue of the reasonableness' of the tariff rates is open for exploration on remand.

*Reiter*, 507 U.S. at ——, 113 S.Ct. at 1216. Therefore, under the *Maislin* decision the ICC was prohibited from considering equitable defenses which alleged inequitable practices. However, the ICC could continue to inquire into the reasonableness of the rate as it remained a valid affirmative defense. *Reiter*, 507 U.S. at ——, 113 S.Ct. at 1217.

On December 3, 1993, the President signed into law the Negotiate Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044 ("Act") which amended title 49 of the United States Code. The Act reverses the portion of the *Maislin* decision which eliminated the **unreasonable practice** affirmative defense as to claims involving rates on shipments prior to September 30, 1990.[4] Section 2(e) of the Act provides in relevant part:

> (e) ALTERNATIVE PROCEDURE FOR RESOLVING DISPUTES.—(1) GENERAL RULE.—For purposes of section 10701 of title 49, United States Code, it shall be an **unreasonable practice** for a motor carrier of property (other than a household goods freight forwarder), or a party representing such a carrier or freight forwarder to attempt to charge or to charge for a transportation service provided before September 30, 1990, the difference between the applicable rate that is lawfully in effect pursuant to a tariff that is filed in accordance with chapter 107 of such title by the carrier or freight forwarder applicable to such transportation service and the negotiated rate for such transportation service if the carrier or freight forwarder is no longer transporting property

between places described in section 10521(a)(1) of such title or is transporting property between places described in section 10521(a)(1) of such title for the purpose of avoiding the application of this subsection.

> (2) JURISDICTION OF COMMISSION.—The Commission shall have jurisdiction to make a determination of whether or not attempting to charge or the charging of a rate by a motor carrier or freight forwarder or party representing a motor carrier or freight forwarder is an **unreasonable practice** under paragraph (1). If the Commission determines that attempting to charge or the charging of the rate is an **unreasonable practice** under paragraph (1), the carrier, freight forwarder, or party may not collect the difference descried in paragraph (1) between the applicable rate and the negotiated rate for the transportation service.

Negotiated Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044, 2047 (emphasis added). Therefore, subsection (e) of the Act allows defendants which are being sued for undercharges on transportation services provided before September 30, 1990, to elect to opt out of subsection (a) of the Act and raise an unreasonable practice defense. The general provisions of the Act are contained in subsection (a). These general provisions allow a defendant upon a certain showing to elect to settle the claim through payment of five to twenty percent of the undercharges allegedly owed. Therefore, subsection (e) provides the defendant with an opportunity to avoid any payment what so ever on these older claims through the use of an unreasonable practice defense. The showing required to be eligible for subsection (a) and subsequently subsection (e) of the act is as follows:

> the person against whom the claim is made may elect to satisfy the claim ... (by having the dispute resolved by the Commission), upon showing that—

> (A) the carrier or freight forwarder is no longer transporting property or is trans-

4. *See In re Olympia Holding Corp.*, No. 91–1074–Civ–J–16, 93–2–MV–J–16, 1994 WL 243463 (M.D.Fla., Feb. 28, 1994); *Jones Truck Lines, Inc.* *v. AFCO Steel, Inc.*, 849 F.Supp. 1296 (E.D.Ark. 1994); *Jones Truck Lines, Inc. v. Grinnell Corp. Anvil Products Div.*, 167 B.R. 488 (N.D.Ill.1994)

porting property for the purpose of avoiding the application of this subsection; and

(B) with respect to the claim—

(i) the person was offered a transportation rate by the carrier or freight forwarder other than that legally on file with the Commission for the transportation service;

(ii) the person tendered freight to the carrier or freight forwarder in reasonable reliance upon the offered transportation rate;

(iii) the carrier or freight forwarder did not properly or timely file with the Commission a tariff providing for such transportation rate or failed to enter into an agreement for contract carriage;

(iv) such transportation rate was billed and collected by the carrier or freight forwarder; and

(v) the carrier or freight forwarder demands additional payment of a higher rated filed in a tariff.

If there is a dispute as to the showing under subparagraph (A), such dispute shall be resolved by the court in which the claim is brought. If there is a dispute as to the showing under subparagraph (B), such dispute shall be resolved by the Commission.

Negotiated Rates Act of 1993, Pub.L. No. 103–180, 107 Stat. 2044, 2044–45. It is undisputed that the plaintiff is no longer transporting property. Pursuant to the defendant's Motion for Referral to the ICC and Jones position that the transportation was done in its capacity as a common carrier, it is the opinion of the Court that the requirements under subparagraph (B) are sufficiently supported by the evidence to justify referral of the "unreasonable practice" issue to the ICC.

■ Plaintiff raises several arguments which it contends justify a denial of defendant's motion. First, the defendant maintains that pursuant to section 9 of the NRA the NRA does not apply to claims of bankrupts. Section 9 of the NRA provides as follows: "Nothing in this Act ( . . . . ) shall be construed as limiting or otherwise affecting application of Title 11, United States Code, relating to bankruptcy; . . .". Defendant contends that under 11 U.S.C. § 541(c)(1) the undercharge claims are property of the bank-

rupt estate. Therefore, defendant asserts that as 11 U.S.C. § 541(c)(1) conflicts with the NRA it voids the application of the NRA to the claims of a bankrupt estate. "Virtually every court that has considered the issue, however, has disagreed. *See, e.g., Jones Truck Lines, Inc. v. United States Brass Corp.,* No. 3:93–CV–1318–T [1994 WL 395667] (N.D.Tex. Apr. 7, 1994); *Lewis v. H.E. Wisdom & Sons, Inc.,* No. 93–C–985 [1994 WL 110659] (N.D.Ill. Mar. 30, 1994); *Jones Truck Lines, Inc. v. AFCO Steel, Inc.,* 849 F.Supp. 1296 (E.D.Ark.1994); *Jones Truck Lines v. Aladdin Synergetics, Inc.,* No. 3–93–0442 [1994 WL 150154] (M.D.Tenn. Feb. 11, 1994); *Gross Common Carrier, Inc. v. A.B. Dick Co.,* No. 93–C–5012 [861 F.Supp. 638] (N.D.Ill. Jan. 8, 1994)." *Jones Truck Lines, Inc. v. Frigid Fluid Co.,* 169 B.R. 52 (N.D.Ill.1994). Only one court has accepted defendant's argument. *See, In re Bulldog Trucking, Inc.,* No. 92–3100, slip op., 1994 WL 197420 (Bankr.W.D.N.C. Feb. 18, 1994). Upon review of the legislative history of the NRA the Court agrees with those courts finding that "one of the main purposes of NRA was to make an impact on the number of lawsuits brought by trustees in their capacities as representatives of bankrupt estates." *Jones Truck Lines, Inc. v. Alliance Rubber Co.,* 166 B.R. 691 (W.D.Ark.1994). Therefore, it is this Court's finding that the NRA is applicable to this cause of action.

■ Plaintiff's second argument is that section 2(e) of the NRA applies only prospectively and has no effect on pending claims. Section 2(c) of the NRA amended the notes to 49 U.S.C.A. § 10701 to provide as follows:

APPLICABILITY.—The amendments made by subsections (a) and (b) of this section [enacting subsec. (f) of this section and amending subsec. (e) of this section] shall apply to all claims pending as of the date of the enactment of the Act [December 3. 1993] . . . .

Plaintiff contends that as section 2(c) addresses only the applicability of subsections (a) and (b) that it is inapplicable to subsection (e). The Court can not agree with plaintiff's argument. As described above, subsection (e) of the NRA prescribes a procedure for defendants who are being sued on older

shipments to elect out of the general provisions of the NRA. It would be inconsistent with the reasoning of the NRA and the numerous decisions under the NRA involving transportation services provided prior to September 30, 1990. *See, e.g., Jones Truck Lines v. United States Brass Corp.*, No. 3:93–CV–1318–T, 1994 WL 395667 (N.D.Tex. Apr. 7, 1994); *Lewis v. H.E. Wisdom & Sons, Inc.*, No. 93–C–985, 1994 WL 110659 (N.D.Ill. Mar. 30, 1994); *Jones Truck Lines v. AFCO Steel, Inc.*, 849 F.Supp. 1296 (E.D.Ark.1994); *Jones Truck Lines v. Aladdin Synergetics, Inc.*, No. 3–93–0442, 1994 WL 150154 (M.D.Tenn. Feb. 11, 1994); *Gross Common Carrier, Inc. v. A.B. Dick Co.*, No. 93–C–5012 (N.D.Ill. Jan. 8, 1994). *Jones Truck Lines, Inc. v. Frigid Fluid Co.*, 169 B.R. 52 (N.D.Ill.1994).

## V. Rate Reasonableness

■ The defendant's final argument for referral to the ICC is that the action should be stayed while an administrative proceeding is filed pursuant to 49 U.S.C. § 11701(b) to determine whether the filed rates are reasonable. Plaintiff argues that the defendant has failed to submit sufficient evidence to warrant referral of the issue of rate reasonableness. The Eighth Circuit Court of Appeal's opinion in *Atlantis Exp.* provides this Court with the rule of law to apply in this situation:

> It is well established that the ICC has primary jurisdiction to determine whether filed rates are reasonable. If the conclusory assertion of rate unreasonableness required referral to the ICC, however, unjustified delays could occur. Accordingly, to justify referral, parties must make a threshold showing that the ICC could find the filed rates unreasonable.

> In a resent opinion, the ICC stated that relevant factors include whether the filed rate would have moved the traffic, and how the carrier's rates compare with competitively set rates for the same traffic—especially those rates offered by healthy (nonbankrupt) carriers.

*Atlantis Exp.* 955 F.2d at 537 (citations omitted). The ICC has also provided guidance on the issue, stating as follows:

Although there is no single fixed test which the Commission applies to rate reasonableness cases, over the years it has developed some general criteria or factors which it applies to the varying circumstances of a particular case depending on the facts. These include: (a) relevant rate comparisons, (b) a carrier's proffer of a particular rate, (c) whether the rate would have moved the traffic had it been assessed at the time the shipment took place, (d) the class rates for like traffic, and (e) tariff analysis.

*Petition for Issuance of Rate reasonableness and Unreasonable Practices Policy Statement*, 8 I.C.C.2d 61, 74 (1991).

Despite plaintiff's assertions to the contrary, the Court finds that the defendant has made the requisite threshold showing of unreasonableness. The defendant submitted the affidavit of Mr. Douglas Bosnik, who was the General Manager for the Scott Fetzer Transportation Company. The affidavit reflects that the negotiated rate charged by Jones Trucking for the shipments were consistent with the prevailing market rate. Furthermore, Mr. Bosnik contends that the filed rate was higher than the prevailing market rate and would not have moved traffic. This is a sufficient showing to justify referral of the rate reasonableness issue.

## VI. Conclusion

Based upon recent case law and the NRA it is clear that the contract versus common carriage, unreasonable practice, and rate reasonableness issues should be referred to the ICC. It is therefore, ORDERED that the clerk administratively terminate the action in the records, without prejudice to the right of the parties to re-open the proceedings for good cause shown for the entry of any stipulation, order, or for any other purpose required to obtain a final determination of the litigation. Provided, however, this case will not be re-opened unless within sixty (60) days of the final disposition of the above proceeding an application to re-open is filed herein by one or more parties to this action. If no such motion to re-open is filed within said sixty (60) day period this order shall be

deemed a dismissal with prejudice. of all claims made in this case.